**SEALED**

**FILED**
APR 07 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

REDACTED COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | **SEALED INDICTMENT** |
| Plaintiff, | § § | CRIMINAL NO. SA-21-CR- |
| v. | § § | **CTS 1-18:** Title 18 U.S.C. §§ 1343 and 2, Wire Fraud and Aiding and Abetting |
| VERONICA RIOS (1)<br>█████████ (2)<br>PEDRO GUILLEN (3)<br>MARIO MARTINEZ (4)<br>GUADALUPE ALSIDEZ (5)<br>AMANDA HERNANDEZ (6)<br>MAIRA VARGAS (7), | § § § § § § § § | |
| Defendants. | | |

SA21CR0153 FB

THE GRAND JURY CHARGES:

**INTRODUCTION**

1. At all times relevant to this Indictment, Texas Chrome Transport, Inc. (hereinafter TCT) and MJR Truck Lines, Inc. (hereinafter MJR) (collectively and/or singularly hereinafter the Company) are related cargo and freight companies that specialize in transporting bulk commodities. TCT and MJR are headquartered at and operated out of Atascosa, Texas, all in the Western District of Texas.

2. Veronica Rios (hereinafter Rios) was hired by the Company on or around March of 2017 as an administrative assistant. Her duties included processing payroll for the Company. As the payroll administrator, Veronica Rios had password(s) necessary to access payroll, and she would prepare and process the Company's payroll each week. Rios would utilize a self-service, web-based payroll company called RunPayroll to input the Company's payroll information and

1

submit it. The Company would then pay its employees by directly depositing the payroll funds into the employee's designated bank account.

3. During the relevant time period, and continuing until March of 2020, Tommy Byrum (hereinafter Byrum) was employed by the Company. During the relevant time period, and continuing until September of 2019, Pedro Guillen (hereinafter Guillen) was employed by the Company. During the relevant time period, and continuing until May of 2019, Amanda Hernandez (hereinafter Hernandez) was employed by the Company. Mario Martinez, (hereinafter Martinez) was Rios' boyfriend and has never been employed by the Company. Maira Vargas (hereinafter Vargas) was Rios' friend and has never been employed by the Company. Guadalupe Alsidez (hereinafter Alsidez) was Rios' friend and has never been employed by the Company.

4. From 2017 through March of 2020, the Company used Community National Bank as its banking institution from which payroll transactions would occur. From March of 2020 through at least the date of this indictment, the Company used Wells Fargo as its banking institution from which payroll transactions would occur.

5. Community National bank is located in Missouri. Wells Fargo bank is headquartered in California. NetSpend is a prepaid debit card provider that is a wholly owned subsidiary of Total Systems Services, Inc., headquartered in Georgia. JP Morgan Chase is headquartered in New York. Bank of America is headquartered in North Carolina. Security Service Federal Credit Union is headquartered in Texas. First National Bank is headquartered in Texas. RunPayroll is headquartered in Illinois.

## SCHEME TO DEFRAUD

6. On or about 2017 and continuing through and including 2020, Rios began overpaying employees of the Company in exchange for a return of some of the amount of

overpayment. In 2017, Rios started to overpay Guillen. Between 2017 and 2020, Rios over paid Guillen over $424,000. Rios overpaid Byrum from on or around 2018 through 2020. Rios overpaid Byrum more than $140,000. Rios overpaid Hernandez from on or around May of 2019 until September of 2019. Hernandez' employment with the Company ended in May of 2019, but Rios continued to pay Hernandez. Hernandez was overpaid more than $30,000.

7. Rios also added non-existent employees to the payroll list. After causing the payroll to be processed, Rios would then delete the non-existent employees from the payroll list so that her superiors would not notice that the payroll report contained non-existent employees.

8. Vargas, Martinez, and Alsidez were three of the non-existent employees added by Rios to the payroll. Beginning in 2018 and continuing through 2020, Rios recruited her friends Vargas, Martinez, and Alsidez, who did not work for the Company, to receive fraudulent payroll deposits. After receiving the fraudulent deposits, the friends returned a portion of the proceeds to Rios. In this way, Vargas received fraudulent payroll deposits totaling over $30,000, Martinez received fraudulent payroll deposits totaling over $432,000, and Alsidez received fraudulent payroll deposits totaling over $200,000.

9. Interstate wire communications were used in the transmittal of payroll data from the Company computer located in Texas to the web-based payroll company called RunPayroll located in Illinois. Interstate banking channels were used for the depositing of funds into an employee or non-existent employee's bank or financial account, thus causing a signal to be transmitted by interstate wire from the Company bank account into the employee or non-existent employee's bank or financial account.

## COUNTS 1-18
(Title 18 U.S.C. §§ 1343 and 2)

Beginning on or about 2018 and continuing through on or about September 2020, in the Western District of Texas and elsewhere, Veronica Rios knowingly devised and intended to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, and representations from the Company, aided and abetted by Byrum, Guillen, Martinez, Alsidez, Hernandez, and Vargas. The purpose of the scheme was to divert and embezzle money from the Company for the personal use and benefit of Rios, Byrum, Guillen, Martinez, Alsidez, Hernandez, and Vargas. The loss to the Company from the fraudulent scheme totaled approximately $1,407,392.43. For purposes of executing the above-described scheme and artifice to defraud, the following individuals caused to be transmitted by means of wire communication in interstate commerce the following:

### As to VERONICA RIOS and PEDRO GUILLEN:

| Count | Date | Amount | Description |
|---|---|---|---|
| 1 | December 19, 2019 | $3,784.67 | payment from the Company's Community National Bank account to Pedro Guillen's First National Bank account ending in 7142. |
| 2 | February 6, 2020 | $4,491.23 | payment from the Company's Community National Bank account to Pedro Guillen's First National Bank account ending in 7142. |
| 3 | September 10, 2020 | $5,534.10 | payment from the Company's Wells Fargo account to Pedro Guillen's First National Bank account ending in 7142. |

### As to VERONICA RIOS and AMANDA HERNANDEZ:

| Count | Date | Amount | Description |
|---|---|---|---|
| 4 | July 31, 2019 | $385.03 | payment from the Company's Community National Bank account to Amanda Hernandez' Netspend account ending in 1320. |
| 5 | December 4, 2019 | $417.97 | payment from the Company's Community National Bank account to Amanda Hernandez' Netspend account ending in 1320. |
| 6 | September 9, 2020 | $319.34 | payment from the Company's Wells Fargo account to Amanda Hernandez' Netspend account ending in 1320. |

**As to VERONICA RIOS and** ▮▮▮▮▮▮▮▮▮▮

| | | | |
|---|---|---|---|
| Count 7 | April 24, 2020 | $4,102.62 | payment from the Company's Wells Fargo account to ▮▮▮▮ JP Morgan Chase account ending in 1787. |
| Count 8 | May 8, 2020 | $1,151.49 | payment from the Company's Wells Fargo account to ▮▮▮▮ JP Morgan Chase account ending in 1787. |
| Count 9 | May 22, 2020 | $1,144.19 | payment from the Company's Wells Fargo account to ▮▮▮▮ JP Morgan Chase account ending in 1787. . |

**As to VERONICA RIOS and GUADALUPE ALSIDEZ:**

| | | | |
|---|---|---|---|
| Count 10 | April 24, 2020 | $3,521.17 | payment from the Company's Wells Fargo account to Guadalupe Alsidez' Bank of America account ending in 4208. |
| Count 11 | July 2, 2020 | $3521.17 | payment from the Company's Wells Fargo account to Guadalupe Alsidez' Bank of America account ending in 4208. |
| Count 12 | September 11, 2020 | $3,368.84 | payment from the Company's Wells Fargo account to Guadalupe Alsidez' Bank of America account ending in 4208. |

**As to VERONICA RIOS and MARIO MARTINEZ:**

| | | | |
|---|---|---|---|
| Count 13 | May 23, 2018 | $4,665.00 | payment from the Company's Community National Bank account to Mario Martinez' Netspend account ending in 3639. |
| Count 14 | February 20, 2019 | $3,359.67 | payment from the Company's Community National Bank account to Mario Martinez' Netspend account ending in 3639. |
| Count 15 | September 9, 2020 | $5,453.91 | payment from the Company's Wells Fargo account to Mario Martinez' Netspend account ending in 3639. |

**As to VERONICA RIOS and MAIRA VARGAS:**

| | | | |
|---|---|---|---|
| Count 16 | August 7, 2020 | $3,725.75 | payment from the Company's Wells Fargo account to Maira Vargas' Security Service Federal Credit Union account ending in 2071. |
| Count 17 | August 14, 2020 | $3,735.55 | payment from the Company's Wells Fargo account to Maira Vargas' Security Service Federal Credit Union account ending in 2071. |
| Count 18 | August 21, 2020 | $4,854.38 | payment from the Company's Wells Fargo account to Maira Vargas' Security Service Federal Credit Union account ending in 2071. |

All in violation of 18 U.S.C. § 1343.

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
[*See* Fed. R. Crim. P. 32.2]

### I.

### Wire Fraud Violations and Forfeiture Statutes
[Title 18 U.S.C. § 1343, subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)( C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]

As a result of the foregoing criminal violations set forth above, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c), which states the following:

> **Title 18 U.S.C. § 981. Civil Forfeiture**
> (a)(1) The following property is subject to forfeiture to the United States:
> * * *
> (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title.

> **Title 28 U.S.C. § 2461.**
>
> (c) If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure . . . .

This Notice of Demand for Forfeiture includes but is not limited to the property described below.

### II.

### Money Judgment

A sum of money that represents the property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the violations set forth above, for which the

6

Defendants are liable.

## III.

### Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of defendants:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the value of the money judgment, as substitute assets pursuant to Title 21 U.S.C § 853(p) and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

ASHLEY C. HOFF
UNITED STATES ATTORNEY

BY: _____
DAPHNE D. NEWAZ
Assistant U.S. Attorney